ESTATE OF JOHNSON ET AL., APPELLEES, *v.* RANDALL SMITH, INC., ET AL.,
APPELLANTS.

[Cite as *Estate of Johnson v. Randall Smith, Inc.,* **135 Ohio St.3d 440,
2013-Ohio-1507.**]

*Medical malpractice—Admissibility of statement of apology by healthcare
provider—Prospective application of R.C. 2317.43.*

(No. 2012-0014—Submitted February 5, 2013—Decided April 23, 2013.)

APPEAL from the Court of Appeals for Portage County, No. 2010-P-0050,
196 Ohio App.3d 722, 2011-Ohio-6000.

_____

SYLLABUS OF THE COURT

R.C. 2317.43, which precludes the admission of statements of apology by a
healthcare provider, applies to any cause of action filed after September
13, 2004.

_____

LANZINGER, J.

{¶ 1} In this case, we confront the proper application of R.C. 2317.43, Ohio's statute that prevents the admission of certain statements made by healthcare providers. Also known as the apology statute, R.C. 2317.43 provides opportunities for healthcare providers to apologize and console victims of unanticipated outcomes of medical care without fear that their statements will be used against them in a malpractice suit, by making the statements inadmissible as evidence of an admission of liability or a statement against interest. We are asked to determine whether R.C. 2317.43 can be applied to a statement of apology made by a healthcare provider before the statute took effect.

**{¶ 2}** Because we conclude that the Eleventh District Court of Appeals erred in its analysis, we reverse the judgment that remanded this case for a new trial.

## I. Background

**{¶ 3}** On April 24, 2001, appellant Dr. Randall Smith performed surgery on Jeanette Johnson to remove her gall bladder.[1] Although the surgery was scheduled to be done laparoscopically, when Mrs. Johnson's common bile duct was injured during the procedure (a known surgical risk), Dr. Smith converted to an "open procedure" to repair the duct. After the surgery, Dr. Smith explained to Mrs. Johnson the manner in which the injury had occurred and the manner in which he had repaired the duct.

**{¶ 4}** One month later, Mrs. Johnson returned to the hospital because of complications resulting from the bile-duct injury. Her treatment required that she be transferred to another hospital. Before the transfer, she became upset and emotional. In an effort to console her, Dr. Smith took Mrs. Johnson's hand and attempted to calm her by saying, "I take full responsibility for this. Everything will be okay."

**{¶ 5}** On August 19, 2002, Mrs. Johnson and her husband, Harvey Johnson, filed a medical-malpractice action against Dr. Smith and the corporation through which he conducted his practice, but they voluntarily dismissed that action in September 2006. A new complaint was filed on July 26, 2007, in which the Johnsons alleged that Dr. Smith had rendered negligent medical treatment to Mrs. Johnson, and Mr. Johnson alleged that he had sustained a loss of consortium.

**{¶ 6}** A jury trial was scheduled for June 2010. Before the trial began, Dr. Smith submitted a motion in limine to prohibit the introduction of any

---

1. Jeanette Johnson died on August 17, 2012. Jeannine Johnson and Harvey W. Johnson are the administrators of the estate of Jeanette Johnson. The estate of Jeanette Johnson is substituted in this action as an appellee in the place of Jeanette Johnson.

evidence regarding the statement of apology that he made to Mrs. Johnson before her transfer to the second hospital. Dr. Smith asserted that his statement constituted an expression of sympathy that could not be admitted into evidence under R.C. 2317.43.

{¶ 7} The Johnsons submitted two responses to the motion in limine. First, they argued that the statement was not an apology or expression of sympathy, but rather an admission of the doctor's negligence. Second, they argued that R.C. 2317.43 did not apply to Dr. Smith's statement, because the statute was enacted and took effect three years after the malpractice claim arose and the statement was made. At the hearing on the motion in limine, Mrs. Johnson, her daughter, and their friend testified about Dr. Smith's statement and the context in which it was made. After close of this testimony, the trial court ruled that any evidence regarding the doctor's statement would be inadmissible at trial. Specifically, the trial court stated:

> She [a witness], I think, covered the circumstances where Miss [sic] Johnson was distressed, that she obviously was not comfortable, she was suffering, upset, and that Dr. Smith, in a compassionate manner, came over and was sympathetic and acted to comfort her.
>
> He took her hand, and in doing so, stated that he took responsibility for the situation in having her transferred.
>
> It's the Court's opinion that the statements and gestures and actions are covered under 2317.43 [effective September 13, 2004], and, therefore, I am going to grant the motion in limine and exclude the statement.

**{¶ 8}** On June 18, 2010, the jury returned a general verdict in favor of Dr. Smith on the two claims asserted by the Johnsons.

**{¶ 9}** The Johnsons appealed, and the Eleventh District Court of Appeals, in a two-to-one decision, reversed the trial court's judgment, holding that the trial court had erred in applying R.C. 2317.43 retroactively to exclude Dr. Smith's statement, because the General Assembly had not expressly stated its intent that the statute should apply retroactively. *Johnson v. Randall Smith, Inc.*, 196 Ohio App.3d 722, 2011-Ohio-6000, 965 N.E.2d 344, ¶ 19-22 (11th Dist.). The court of appeals ordered a new trial on the merits. The appellate court held that jurors could have determined that the words "take full responsibility" when taken in context meant that Dr. Smith was admitting fault. The court of appeals held that the statement should have been admitted because its probative value was not substantially outweighed by the danger of unfair prejudice. *Id.* at ¶ 27-28. The dissenting judge, however, focused not on when Dr. Smith made the statement but on when the complaint was filed. In his view, R.C. 2317.43 was applicable because "the Johnsons' civil action was not 'brought' until 2007, after the effective date of the statute." *Id.* at ¶ 31 (Cannon, J., dissenting).

**{¶ 10}** We accepted Dr. Smith's discretionary appeal and now consider two propositions of law:

> Proposition of Law No. 1: Ohio Revised Code § 2317.43 applies to any cause of action commenced or filed after the enactment date of the statute and serves to preclude the introduction into evidence [of] a healthcare provider's sympathetic statements and gestures.

> Proposition of Law No. 2: Ohio Revised Code § 2317.43 is procedural in nature and applies retroactively to preclude the

4

introduction into evidence [of] a healthcare provider's sympathetic statements and gestures.

{¶ 11} The two propositions of law can be reduced to one issue: Does R.C. 2317.43 apply to the statement made by Dr. Smith to apologize to and console Mrs. Johnson?

{¶ 12} We now hold that R.C. 2317.43, which precludes the admission of statements of apology by a healthcare provider, applies to any cause of action filed after September 13, 2004.

{¶ 13} We therefore reverse the judgment of the Eleventh District and reinstate the judgment on the jury's verdict.

## II. Analysis

### A. *The Statute*

{¶ 14} The question before the court is whether R.C. 2317.43, which became effective on September 13, 2004, applies to a statement of apology made in 2001 but offered in evidence in a case that was not filed until 2007. The General Assembly, in enacting R.C. 2317.43, prohibited the introduction of any sympathetic statements and gestures made by a healthcare provider in any civil action "brought" by an alleged victim of an unanticipated outcome of medical care. The effective date of the statute was September 13, 2004. 150 Ohio Laws, Part III, 4146, 4153. Since its enactment, subsection (A) has stated:

(A) *In any civil action brought by an alleged victim* of an unanticipated outcome of medical care or in any arbitration proceeding related to such a civil action, any and all statements, affirmations, gestures, or conduct expressing apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence that are made by a health care provider or an

employee of a health care provider to the alleged victim, a relative of the alleged victim, or a representative of the alleged victim, and that relate to the discomfort, pain, suffering, injury, or death of the alleged victim as the result of the unanticipated outcome of medical care are **inadmissible** as evidence of an admission of liability or as evidence of an admission against interest.

(Emphasis added.) R.C. 2317.43(A).

*B. Statutory Interpretation*

**{¶ 15}** The first phrase, "In any civil action brought by an alleged victim," determines the application of the statute. A "civil action" has been defined as an "[a]ction brought to enforce, redress, or protect private rights. In general, all types of actions other than criminal proceedings." *Black's Law Dictionary* 222 (5th Ed.1979). A "cause of action" is defined as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitled one person to obtain a remedy in court from another person." *Black's Law Dictionary* 251 (9th Ed.2009). Case law has treated "brought" synonymously with "commenced." *E.g., Cover v. Hildebran,* 103 Ohio App. 413, 415, 145 N.E.2d 850 (2d Dist.1957).

**{¶ 16}** When a statute's language is clear and unambiguous, a court must apply it as written. *Zumwalde v. Madeira & Indian Hill Joint Fire Dist.,* 128 Ohio St.3d 492, 2011-Ohio-1603, 946 N.E.2d 748, ¶ 23-24; *Sears v. Weimer,* 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus. The language of R.C. 2317.43(A) is clear and unambiguous. By its express terms, R.C. 2317.43 applies to "any civil action brought" by persons described in the statute. This means that the statute applies to a civil lawsuit filed after the effective date of the statute.

{¶ 17} The Johnsons argue that they "brought" this civil action when they initially filed their original complaint against Dr. Smith in August 2002. That action, however, was voluntarily dismissed in 2006. When an action has been voluntarily dismissed, Ohio law treats the previously filed action as if it had never been commenced. *Zimmie v. Zimmie*, 11 Ohio St.3d 94, 95, 464 N.E.2d 142 (1984). The action filed by the Johnsons in 2002 must be treated as if it never existed. The Johnsons "brought" or commenced this civil action upon the filing of their complaint on July 26, 2007. When this action was brought by the Johnsons, R.C. 2317.43 had been in effect for almost three years.

*C. Prospective Application*

{¶ 18} The court of appeals, in analyzing this issue, looked at it another way and assumed that the statement that Dr. Smith made to Mrs. Johnson in 2001 was to be considered in its analysis of whether the statute applied. The court of appeals concluded that since the conduct occurred in 2001, the statement could not be properly excluded under the statute. This interpretation, however, does not give effect to the plain meaning of the statute, because the Johnsons' "civil action" was not "brought" until 2007, after the effective date of the statute.

{¶ 19} Unquestionably, the lawsuit filed by the Johnsons against Dr. Smith is a "civil action" as that term is used in R.C. 2317.43. Similarly, there can be no doubt that this action was "brought" by the Johnsons. Dr. Smith performed surgery on Mrs. Johnson and made the statement in 2001, when the cause of action for medical negligence arose. Although the Johnsons originally filed suit before the effective date of the statute, they voluntarily dismissed the complaint in 2006 after the statute's effective date. This civil action was commenced, that is, "brought," when it was filed in 2007.

{¶ 20} R.C. 2317.43 applies to all civil actions filed after the statute's effective date of September 13, 2004. "If there is no clear indication of retroactive application, then the statute may only apply to cases which arise

subsequent to its enactment." *Kiser v. Coleman,* 28 Ohio St.3d 259, 262, 503 N.E.2d 753 (1986). We have also held that "[l]aws of a remedial nature providing rules of practice, courses of procedure, or methods of review are applicable to any proceedings conducted after the adoption of such laws." *Kilbreath v. Rudy,* 16 Ohio St.2d 70, 242 N.E.2d 658 (1968), paragraph two of the syllabus. Moreover, a statute is properly applied prospectively if it has been enacted after the cause of action but before the trial of the case. *See* R.C. 1.48; *Denicola v. Providence Hosp.,* 57 Ohio St.2d 115, 117-118, 387 N.E.2d 231 (1979).

**{¶ 21}** Here, the court of appeals' concern over retroactive application of the statute was unnecessary, for the trial court used a prospective application to exclude Dr. Smith's statement. R.C. 2317.43 took effect on September 13, 2004, covering "any civil action brought" after that date. The Johnsons' filing of this case on July 26, 2007, meant that the statute applied. This interpretation gives effect to the plain meaning of the statute, as well as R.C. 1.48's instruction that laws are presumed to apply prospectively. *Denicola; Kilbreath.*

D. *No Abuse of Discretion*

**{¶ 22}** Because we have determined that the statute applies, the next step is to determine whether Dr. Smith's statement was properly excluded. The court of appeals determined that the statute did not apply and then addressed whether the statement was admissible under the Ohio Rules of Evidence. *Johnson v. Randall Smith, Inc.,* 196 Ohio App.3d 722, 2011-Ohio-6000, 965 N.E.2d 344, ¶ 22. Decisions involving the admissibility of evidence are reviewed under an abuse-of-discretion standard of review. *State v. Hancock,* 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032. Similarly, decisions granting or denying a motion in limine are reviewed under an abuse-of-discretion standard of review. *Illinois Controls, Inc. v. Langham,* 70 Ohio St.3d 512, 526, 639 N.E.2d 771 (1994). For an abuse of discretion to have occurred, the trial court must have taken action that is unreasonable, arbitrary, or unconscionable. *State ex rel.*

*Beacon Journal Publishing Co. v. Akron,* 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 59.

**{¶ 23}** In this case, the trial court heard testimony from witnesses before ruling on the motion in limine.[2] Based upon its observation, the court concluded that "the statements and gestures and actions are covered under 2317.43." The court of appeals, in reviewing the decision, did not analyze under an abuse-of-discretion standard whether the trial court had acted unreasonably, arbitrarily, or unconscionably in reaching its conclusion. Thus, it was improper to reverse the trial court's decision to exclude Dr. Smith's statement. The trial court had determined that Dr. Smith was faced with a distressed patient who was upset and made a statement that was designed to comfort his patient. This is precisely the type of evidence that R.C. 2317.43 was designed to exclude as evidence of liability in a medical-malpractice case.

### III. Conclusion

**{¶ 24}** Dr. Smith's statement was properly excluded pursuant to R.C. 2317.43. We therefore reverse the judgment of the Eleventh District Court of Appeals and remand the case to the trial court to reinstate the jury's verdict and the trial court's judgment.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and KENNEDY, FRENCH, and O'NEILL, JJ., concur.

PFEIFER and O'DONNELL, JJ., concur in judgment only.

————————————

Perantinides & Nolan Co., L.P.A., Antonios P. Tsarouhas, and Paul G. Perantinides, for appellees.

---

2. The witnesses were Mrs. Johnson; her daughter, Janine Johnson; and their friend, Amy Semprock.

Bonezzi, Switzer, Murphy, Polito & Hupp Co., L.P.A., Brett C. Perry, John S. Polito, and Jason A. Paskan, for appellants.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, and Michael J. Hendershot, Chief Deputy Solicitor, urging reversal for amicus curiae state of Ohio.

Bonezzi, Switzer, Murphy, Polito & Hupp Co., L.P.A., Jennifer R. Becker, and Brian F. Lange, urging reversal for amicus curiae the Academy of Medicine of Cleveland & Northern Ohio.

Bricker & Eckler and Anne Marie Sferra, urging reversal for amici curiae Ohio Hospital Association, Ohio State Medical Association, and Ohio Osteopathic Association.

_____